IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 7:19-CV-407 |
| | § | |
| 23.311 ACRES OF LAND, more or less, | § | |
| situated in HIDALGO COUNTY, STATE | § | |
| OF TEXAS; and FRANK SCHUSTER FARMS | § | |
| INC., et al., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS FRANK SCHUSTER FARMS, INC. AND EL SABINO FAMILY FARMS, LLC'S RESPONSE IN OPPOSITION TO UNITED STATES OF AMERICA'S MOTION FOR ORDER OF IMMEDIATE POSSESSION (DKT. # 9)**

Defendants FRANK SCHUSTER FARMS, INC. and EL SABINO FAMILY FARMS, LLC, hereinafter referred to collectively as "Defendants," respond to the United States of America's Motion for Order of Immediate Possession (Dkt. #9) and would respectfully show the Court as follows:

1. This is a statutory condemnation proceeding by which the United States of America (the "Government") seeks to acquire real property in fee simple from Defendants for construction of a pedestrian border barrier. The Government has filed a Complaint in Condemnation (Dkt. #1) and a Declaration of Taking (Dkt. #2). The Government has also deposited its estimate of just compensation (Dkt. #5). Although the Government has initiated the condemnation process by making these filings, the Government's request for immediate possession of the subject property is premature and should be denied, or at least abated, for the following reasons:

- ✓ The Government has failed to make a bona fide effort to negotiate with the Defendants as required in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. § 1103(b)(3) (the "IIRIRA");

✓ The Government has failed to identify how Defendants will access their remainder property; and

✓ The Government has failed to acquire access to the subject property.

2. These issues are also addressed in part in Defendants' Motion to Dismiss and For More Definite Statement, and Subject Thereto, Original Answer, Affirmative Defenses, and Jury Demand (Dkt. #7), which is incorporated by reference as if restated herein.

**A. Failure to make a bona fide effort to negotiate.**

3. Under the IIRIRA, the authority for the Attorney General's acquisition of land for the border fence is explicitly set out in 8 U.S.C. sec. 1103(b) (2)–(3), which provides in pertinent part:

(2) The Attorney General may contract for or buy any interest in land ... as soon as the lawful owner of that interest fixes a price for it and the Attorney General considers that price to be reasonable.

(3) When the Attorney General and the lawful owner of an interest ... are unable to agree upon a reasonable price, the Attorney General may commence condemnation proceedings pursuant to the Act of August 1, 1888 (Chapter 728; 25 Stat.357).

4. As this Court has previously confirmed, the IIRIRA requires the Government to engage in bona fide negotiations with landowners for the purchase of their property prior to initiating eminent domain proceedings. *United States v. 1.04 Acres of Land*, 538 F. Supp.2d 995, 1009–1010 (S.D. Tex. 2008). This Court has previously found that the IIRIRA manifested a clear Congressional intent that there be a certain level of negotiation between the government and landowner prior to institution of eminent domain proceedings. *Id.* at 1010. The negotiation must be bona fide. *Id.*; *United States v. County of Cascade*, 163 F. Supp. 518, 524 (D. Mont. 1958) (citing *Wilson v. Union Elec. Light & Power Co.*, 59 F.2d 580, 581 (8th Cir. 1932)).

5. "Bona fide effort to negotiate" has been construed to mean "reasonable negotiation with a minimal notion of good faith." *Thornton Dev. Auth. v. Upah*, 640 F. Supp. 1071, 1075 (D. Colo. 1986). Such negotiations need to proceed far enough to indicate that an agreement is impossible. *United States v. County of Cascade*, 163 F. Supp. 518, 524 (D. Mont. 1958) (quoting 29A C.J.S. Eminent Domain § 224). In a case involving a similar statute as the one at bar, good faith negotiations were found to have occurred where the condemning entity had made reasonable efforts to ascertain local land values, initiated negotiations with all property owners to be paid compensation, made reasonable monetary offers, and continued negotiations for approximately five months, all before suit was filed. *U.S.G. Pipeline Co. v. 1.73 Acres of Land*, 1 F. Supp.2d 816, 824–25 (E.D. Tenn. 1998). Likewise, in *Thornton*, the court found that the condemning entity had engaged in bona fide negotiations where the parties had engaged in extensive discussions including several offers and counteroffers to purchase the property in question. 640 F. Supp. at 1075. Further, in *Kerr v. Raney*, 305 F. Supp. 1152, 1156 (W.D. Ark 1969), the court found that a mere perfunctory effort on the part of the condemning entity did not satisfy the requirement of engaging in bona fide negotiations. Finally, this Court in *United States v. 1.04 Acres of Land*, 538 F.Supp.2d 995 (S.D. Tex. 2008) ruled that in the absence of evidence that the government had complied with the bona fide negotiation requirements of the IIRIRA, it had authority to enter appropriate orders in response to the government's failure. *Id*. at 1011–12.

6. Prior to filing these actions, there was little effort to study the numerous issues caused by the seizure of land to create a physical barrier through the middle of the Defendants' much larger tract. For example, although the Government and the Defendants engaged in extensive discussions regarding access to the remainder property on the "Mexico side" of the border barrier, no specific access points were ever incorporated into the Government's pleadings

or schedules. This means there is no formal, legal access to the remainder property until such time as the Government decides to articulate in writing where access to the remainder property may be made. If the Government cannot—or will not—articulate how the Defendants are to access their remainder property, it would have been impossible for the Government to make a good faith offer to purchase the Defendants' property. Likewise, it would have been impossible for the Defendants to adequately evaluate any offers made by the Government and to respond in a reasonable fashion.

7. Similarly, the Government has recently indicated that it has not studied or planned to accommodate drainage or runoff from the part acquired which means the Defendants must be prepared to accommodate and divert any drainage or runoff from the Government's border barrier facilities. This issue could potentially be cured by the Defendants at the Government's expense, however the Defendants must know the precise location of the Government's border barrier facilities, elevations, slopes, etc. in order to determinate what drainage mitigation will be required. The Government, however, has refused to provide any detailed engineering drawings or schematics to Defendants for evaluation and mitigation of these issues.

8. The Government's rush to litigation and request for immediate possession ignores the premature nature of the project and the Government's inadequate consideration of a myriad of access and operational issues caused by the taking. The Government could not possibly have made bona fide offers—much less engaged in bona fide negotiations with the Defendants—for the purchase of their land even if the Government's representatives had the best of intentions. These shortcomings in the offer process preclude the Government from proceeding with the subject condemnations at this time.

9. In light of the fact that the Government did not satisfy the negotiation requirements of the IIRIRA, it does not have authority to initiate the condemnation proceedings in question and the only appropriate remedy is dismissal.

**B.      Failure to provide adequate access to Defendants' remainder property.**

10. Schedule E to the Government's Complaint in Condemnation (Dkt. #1-1 at Sch. E) describes the real property being acquired by the Government. The acquisition bisects the Defendants' property and thus requires a mechanism for the Defendants to access their remainder property, but the Government's description of the real property being acquired provides scant details about how the Defendants are to access their remainder property, stating only:

> Reserving to the owners of the lands . . . reasonable access to and from the owners' lands lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier between the westernmost mark labeled "Beginning" and easternmost mark labeled "Ending" depicted on the map below.

*See id.*

11. The referenced "map below" does not indicate any opening(s) or gate(s) in the border barrier and the Government's vague reference in passing to "reasonable access" through unspecified "opening(s) or gate(s)" fails to provide any definite or specific legal access to the remainder property. The Government has failed to provide specific and reliable information about how access to properties to the south, or "Mexico side," will be controlled which is critical to the continued operation of Defendants' sophisticated agricultural operations.

12. As examples, the Defendants do not know if they will have any gates on their property, and if gates are installed, which gates, if any, will be farm gates and which ones will be vehicular gates, and where the nearest of either of those types of gates will be to their property. The Defendants do not know what hours they will be allowed or disallowed through the gates, if they will even have any on their property. The Defendants do not know what happens with the

5

gates, if any, in the event there is some national security risk or pursuit of criminals by law enforcement, *e.g.*, in such an event, can the gates be locked down allowing no access, what happens if someone is on the river side of his property at the time of such a lockdown, how long could such a lockdown last?

13. Obviously, this type of information is critical to the Defendants so they can plan and evaluate how they are going to be able to use their property after the Government builds the border barrier. The information is also critical so that the Defendants can evaluate the Government's offer of compensation.[1] Moreover, this information is critical to appraisal experts in understanding what property rights are being taken and/or restricted so that a proper appraisal of just compensation can be completed. Appraisal experts will be evaluating how the market place will perceive these properties after the border barrier is built. In order to do so, an appraiser must know what specific access a landowner, the current one or a future one, will be afforded in a legally enforceable way.[2] Without specific answers to these access issues, a real estate appraiser will be unable to properly value the property rights being acquired by the Government.

14. In short, the Government made an offer of compensation without providing information as to how the Defendants will access their remainder property and thus how the Government arrived at the offer. The Government is condemning property rights without specifying critically important information like access. Moreover, the Government has put

---

[1] For example, if a landowner is going to have a gate of adequate size and function on his property that he can conveniently access at all times without restriction, then perhaps the offer by the Government is fair and in good faith. If however, access would be far away, not always available, inadequate in size and function, or may be locked down without warning, then perhaps the Government's offer is woefully inadequate and does not amount to a good faith offer. The question of whether the Government has negotiated in good faith turns in part on these access specifics.

[2] Though representatives of the Government may have offered information to landowners about how the operation of the gates and access will *likely* work, nowhere in any pleadings or in any other legally enforceable way, have these specifics been provided. Such representations are mere promises or predictions and cannot justly be relied upon without some method of enforceability. A participant in the market place could not justifiably rely upon these types of unenforceable promises when evaluating these properties.

landowners in a position where, even if they retain appraisal experts to assist them in this process, landowners cannot adequately tell the appraisers what property rights to value.

## C.     The Government does not have access to the acquisition parcel.

15.     The real property the Government seeks to acquire in this proceeding is bordered to the west by Defendants' private property and to the east by private property owned by a different landowner. There is no public road that provides access to the real property the Government seeks to acquire. As such, there is no way the Government can be awarded possession of the subject property because there is no way for the Government to access the acquisition parcel.

16.     Until such time as the Government acquires access to the acquisition area, the need for possession is moot and should be denied or abated.

## CONCLUSION

17.     The Government's motion for immediate possession is premature because the Government has failed to provide critically important information, including information on how Defendants will access the remainder property and how drainage and runoff from the Government's border barrier will be mitigated. As such, the Government necessarily could not have complied with the bona fide negotiation process as required in the IIRIRA. The Government also has no way to legally access the acquisition parcel. For these reasons, Defendants request that the Government's Motion for Order of Immediate Possession be denied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiff's Motion for Immediate Possession (Dkt. #9) be denied and that they be granted such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted,

BARRON, ADLER, CLOUGH & ODDO, L.L.P.
808 Nueces Street
Austin, Texas 78701
Ph:  (512) 478-4995
Fax:  (512) 478-6022

By: */s/ Roy R. Brandys*
     Roy R. Brandys
     Attorney-in-Charge
     Texas Bar Number 02883550
     Southern District No. 31963
     brandys@barronadler.com
     Nicholas P. Laurent
     Texas Bar Number 24065591
     Southern District No. 1090833
     laurent@barronadler.com

ATTORNEYS FOR DEFENDANTS,
FRANK SCHUSTER FARMS INC. and EL SABINO
FAMILY FARMS, LLC

## **CERTIFICATE OF SERVICE**

I certify that on February 4, 2020, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on counsel of record.

>JOHN A. SMITH, III
>Assistant United States Attorney
>Attorney-in-Charge
>Southern District of Texas No. 8638
>Texas Bar No. 18627450
>One Shoreline Plaza
>800 North Shoreline Blvd., Suite 500
>Corpus Christi, Texas 78401
>Telephone: (361) 888-3111
>Facsimile: (361) 888-3234
>E-mail: john.a.smith@usdoj.gov
>
>HILDA M. GARCIA CONCEPCION
>Assistant United States Attorney
>Southern District of Texas No.3399716
>Puerto Rico Bar No. 15494
>1701 W. Bus. Highway 83, Suite 600
>McAllen, TX 78501
>Telephone: (956) 618-8004
>Facsimile: (956) 618-8016
>E-mail: Hilda.Garcia.Concepcion@usdoj.gov

>*/s/ Roy R. Brandys*
>Roy R. Brandys