IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO.   7:19-CV-407 |
| 23.311 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; AND FRANK SCHUSTER FARMS, INC., ET AL., | § § § § § § | |
| *Defendants.* | § | |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, CROSS-MOTION TO STRIKE IMPROPER DEFENSES, AND MEMORANDUM IN SUPPORT**

1. The United States respectfully opposes defendants Frank Shuster Farms, Inc.'s ("Schuster Farms") and El Sabino Family Farms, LLC's ("El Sabino Farms") (collectively, "landowners") Motions To Dismiss and For More Definite Statement.[1] In addition, pursuant to Rules 12(f) and 71.1(h) of the Federal Rules of Civil Procedures, and Local Rule 7.1, the United States respectfully cross-moves this Court to strike all portions of objections, defenses and demands set forth in the landowners' Answer[2] not related to the United States' authority to condemn as legally insufficient.

2. On December 10, 2019, the United States initiated this condemnation proceeding to acquire 23.311 acres in Hidalgo County to help secure the United States/Mexico border and to determine the amount of just compensation that must be paid for the property taken. Complaint:[3]

---

[1] Dkt. No. 7.
[2] Dkt. No. 7.
[3] Dkt. No. 1.

Declaration of Taking, Schedule B.[4] In their recently filed motion to dismiss and answer to the complaint in condemnation, the landowners have raised numerous defenses, objections, and demands that this Court has rejected in previous condemnation actions.

3. In condemnation actions, defenses serve only to challenge the legal validity of the taking. The landowners do not challenge the United States' authority to condemn the subject property, but complain about the process used, including the description of the property interest to be acquired. As explained below, however, the description of the property and property rights the United States is acquiring is more than sufficient to inform the landowners, and any other interested party, of the interests for which the United States will pay just compensation. Furthermore, and also as explained below, an alleged failure to engage in pre-condemnation negotiations pursuant to 8 U.S.C. § 1103 or 42 U.S.C. § 4601 is not a defense to a condemnation proceeding. Accordingly, the Court should dismiss the landowners' motion to dismiss. The Court also should strike the landowners' non-justiciable and improper challenges to the taking, and allow the parties to focus their resources on the determination of just compensation.

## FACTS AND PROCEDURAL BACKGROUND RELEVANT TO THE INSTANT OPPOSITION AND CROSS-MOTIONS

**The United States' Condemnation**

4. The subject property consists of approximately 23.311 acres in Hidalgo County. The United States has determined that the subject property is needed to construct, install, operate, and maintain fencing, barriers, lighting, and related structures to help secure the United States/Mexico border. Declaration of Taking, Schedule B.[5] The United States has identified Schuster Farms and

---

[4] Dkt. No. 2-1.
[5] Dkt. No. 2-1.

El Sabino Farms, along with Hidalgo County, as parties that may claim an interest in the subject property. *Id.*, Schedule G.

     5. The United States filed a Complaint and a Declaration of Taking to acquire the subject property.[6] The United States will acquire the subject property in fee, subject to certain existing easements, interests in water rights, and reserving to the landowners, "reasonable access to and from the owners' lands lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier." Declaration of Taking, Schedule E.[7] The Complaint and Declaration of Taking state the authority for the taking, the use (purpose) for which the property was taken, a description of the property, the interests acquired, and each known owner of an interest in the property. *Id.* Loren Flossman, Acquisition Program Manager, United States Border Patrol, United States Customs and Border Protection ("CBP"), Department of Homeland Security (DHS), signed the Declaration of Taking, declaring "the rights acquired are taken in the name of and for the use of the United States of America under authority and for the public purpose stated herein." Decl. of Taking.[8]

     6. This taking was filed under three statutes by which Congress authorized the Attorney General to condemn property.[9] Declaration of Taking, Schedule A.[10] The General Condemnation Act, 40 U.S.C. § 3113, directs that a government official "who is 'authorized to procure real estate for . . . public uses' makes an application to the Attorney General who, within 30 days, must initiate

---

[6] Dkt. Nos. 1, 2.
[7] Dkt. No. 2-1.
[8] Dkt. No. 2.
[9] The Declaration of Taking also cites the delegation of the Attorney General's authority to condemn to the CBP official who signed the Declaration of Taking, and the Act of Congress appropriating the funds used for the acquisition. Decl. of Taking, Sched. A (Dkt No. 2-2) (citing Pub. L. 115-141, div. F. tit. II, 132 Stat. 348). Schuster Farms and El Sabino Farms do not challenge the authority of Mr. Flossman to sign the Declaration of Taking or the appropriation of funds used to acquire the subject property. *See generally,* Mot. to Dismiss.

[10] Dkt. No. 2-1.

condemnation proceedings." *See also Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 3-4 (1984) (quoting 40 U.S.C. § 257, re-codified as 40 U.S.C. § 3113). The Declaration of Taking Act, 40 U.S.C. § 3114, permits the Government, "at any time before judgment" in a condemnation suit, to file "a declaration of taking signed by the authority empowered by law to acquire the lands [in question], declaring that said lands are thereby taken for the use of the United States." [11] The Immigration and Nationality Act, 8 U.S.C. § 1103, further permits the Attorney General to acquire property to secure the United States' international border when the United States and the owner of the property in question "are unable to agree upon a reasonable price."

**The Landowners' Motion to Dismiss and Answer**

7. On January 21, 2020, the landowners moved the Court to dismiss the Complaint[12]. They do not challenge the public purpose for which the United States is acquiring the subject property. *See generally, id*. Instead, they argue that the provision reserving to them "reasonable access" to their lands between the Rio Grande River and the border barrier is impermissibly vague because it does not identify the specific number, location, and size of the access points to be provided. *Id.* at 2. The landowners also complain that the United States has failed to adequately describe any effect of the border barrier on their drainage systems. *Id.* They assert that, as a result, they have been "left [] in the dark as to what rights and interests [for which] it may be negotiating compensation," they "have thus been unable to make an informed response to the Government's offer of compensation and have been unable to negotiate as to whether that offer amounts to

---

[11] The landowners also assert that, if the parties are unable to agree upon a "price for the interest the Government seeks, the Government must proceed through straight-condemnation procedure prescribed by 40 U.S.C. § 3113 ("1888 Condemnation Act") and Rule 71.1 of the Federal Rules of Civil Procedure. To the extent the landowners are attempting to argue the United States may not avail itself of the procedures set forth in the Declaration of Taking Act, they are incorrect. *United States v. Muniz*, 540 F.3d 310 (5th Cir. 2008) (noting that the Declaration of Taking Act authorizes the United States, "to file a declaration of taking declaring . . . declaring that the land is taken for the use of the Government.") (citing 40 U.S.C. § 3114)).

[12] Dkt. No. 7.

adequate compensation," and that "[m]eaningful negotiations, as intended by the IIRIRA, are simply not possible absent this information." *Id.* at 3.[13]

8. The Answer lists seven objections, which fall in to three larger categories. The landowners first repeat the arguments they set forth in their motion to dismiss. Answer[14] at 4-6, "Response to Complaint in Condemnation, ¶¶ 5-6, "Response to Declaration of Taking," ¶ 3, "Objections and Defenses," ¶¶ 1-2, 5. They also object to the United States' estimate of just compensation. *Id.*, "Response to Complaint in Condemnation," ¶ 7, "Response to Declaration of Taking," ¶ 4, "Objections and Defenses," ¶ 3-4. Finally, they assert, conclusory and without any explanation as to how, that the United States has failed to comply with: the consultation clause of 8 U.S.C. § 1103 (note); the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. 4601, *et seq.*; "conditions precedent to the filing of a condemnation lawsuit;" the Declaration of Taking Act, 40 U.S.C. § 3114; IIRIRA, 8 U.S.C. § 1103; and the constitutional right to due process. Answer[15] at 7, ¶¶ 5-6, 8, 10-12. As explained below, such challenges are not legal defenses to a federal condemnation. Accordingly, the Court should deny the landowners' motion to dismiss, and strike their seven objections to the complaint.

## ARGUMENT

9. Unique among federal civil actions, affirmative eminent domain proceedings are governed by Rule 71.1. All defenses or objections must be raised in the answer, and federal law strictly defines the legally cognizable defenses to a taking. Once the United States sets forth the nature and extent of the interests to be acquired through condemnation, "[a] court may then inquire only whether the use for which private property is authorized by the legislature to be taken, is in

---

[13] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, Div. C, 110 Stat. 3009-546, 3009-554 (Sept. 30, 1996), amended the Immigration and Nationality Act, 8 U.S.C. § 1103. The United States understands the landowners' reference to "IIRIRA" to be to 8 U.S.C. § 1103, as amended.
[14] Dkt. No. 7.
[15] Dkt. No. 7.

fact a public use." *United States v. 101.88 Acres of Land, et al.*, 616 F.2d 762, 767 (5th Cir. 1980), citing *Shoemaker v. United States,* 147 U.S. 282, 298 (1893). All other challenges or counterclaims are improper. *United States v. 162.20 Acres of Land, et al.*, 639 F.2d 299, 303 (5th Cir. 1981) ("The sole defense which may be raised against the condemnation itself is that of lack of authority to take in the petitioner."). *See also* Fed. R. Civ. P. 71.1(e) (defendant may serve either a notice of appearance or an answer but "[n]o other pleading or motion asserting any additional defense or objection is allowed").

10. Here, the landowners do not dispute that this taking is for a clear public purpose – securing the United States' border with Mexico. *See generally,* Mot. to Dismiss and Answer.[16] The objections they raise, to the alleged failure to identify the type and location of access gates and to the amount of estimated just compensation, simply are not defenses to the condemnation here. *See 162.20 Acres*, 639 F.2d at 303. And, in eliminating non-justiciable and improper challenges to the taking the landowners raise, the Court will permit the parties to address the ultimate issue in this case – determination of just compensation.

**<u>The Landowners' Motion to Dismiss Is Improper, and Without Legal Merit</u>**

11. As a preliminary matter, Rule 71.1(e)(2) does not permit a landowner to move to dismiss a condemnation action. As this Court did in *United States v. 0.996 Acres of Land, et al.*, a case in which the predecessor firm to the firm representing the landowners here also represented the landowner (then known as Baron and Adler, LLP), this Court should dismiss this motion as improperly filed. 2009 WL 10691340 at *2 (S.D. Tex. Aug. 4, 2009).

12. The landowners nevertheless now assert that, because the United States has not yet identified the specifics of any access points to be provided or any impact to their drainage systems,

---

[16] Dkt. No. 7.

they have been "left [] in the dark as to what rights and interests [for which] it may be negotiating compensation," and that "[m]eaningful negotiations, as intended by the IIRIRA [8 U.S.C. § 1103], are simply not possible absent this information." Motion Dismiss.[17] They also assert that the United States "has failed to adequately consult under the note to Title 8 USCA, section 1103." Motion to Dismiss.[18] The arguments the landowners raise in their motion to dismiss are without legal or factual merit.

13. Fatal to their argument that the United States has failed to engage in adequate negotiations, the landowners concede that the United States *has* attempted to negotiate with them, but it is they, the landowners, that have declined to engage. Motion to Dismiss[19] ("Defendants have been unable to make an informed ***response to the Government's offer of compensation*** and have been unable to negotiate whether ***that offer*** amounts to adequate compensation") (emphasis added). "A landowner [] cannot prevent the United States from condemning his or her property simply by refusing to sell or by being unwilling to set a price on an interest in his or her property." *1.04 Acres*, 538 F. Supp.2d at 1011 (citing *Kohl v. United States*, 91 U.S. 367, 371 (1875). On that basis alone, the landowners' failure to respond to the United States' attempt to negotiate, the Court should deny their motion to dismiss.

14. Further, in *United States v. 0.35 Acres of Land, et al.*, Case No. M-08-023 (S.D. Tex.) (*"Muniz"*), Judge Hanen explained "that the pre-possession effort to negotiate should include at a minimum: the identity of the parties, location of the property, a description of the interest sought, and the price to be paid for that interest." Case No. M-08-023 (S.D. Tex.), Order dated April 3, 2008 at 4.[20] The landowners argue here the United States has failed to meet only one of these

---

[17] Dkt. No. 7 at 3.
[18] Dkt. No. 7 at 5.
[19] Dkt. No. 7 at 3.
[20] Dkt. No. 17.

requirements, the description of the interest sought, because the United States has not identified the specific access points it intends to provide. Motion to Dismiss at 2-3.[21] But, contrary to this assertion, Schedule E to the Declaration of Taking specifies the estate taken - fee simple:

> reserving to the owners of the lands identified . . . ***reasonable access*** to and from the owners' lands lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier between the westernmost mark labeled "Beginning" and easternmost mark labeled "Ending" depicted on the map below.

Declaration of Taking, Schedule E[22] (emphasis added). The United States is acquiring "title to the exact easement or estate which is described in the Declaration of Taking and nothing more." *United States v. Brondum*, 272 F.2d 642, 645 (5th Cir. 1959). The United States is not taking, and the landowners are not losing, reasonable access in this condemnation. *See, e.g.,* Complaint and Declaration of Taking.[23] The landowners' professed confusion regarding what "reasonable access" entails does not change that the United States has declared the specific estate it is taking.

15. The purpose of this litigation is to determine just compensation for the acquisition of the estate described in the Declaration of Taking. The landowners will have an opportunity to present what they believe just compensation for this interest – fee simple subject to "reasonable access" for the landowners. *See Shoemaker,* 147 U.S. at 298 (noting that the ultimate, and only, question in a condemnation proceeding once a court determines that the use for which the property is authorized is for a public purpose, is the amount of just compensation). If, at some point in the future, the landowners believe the United States has taken their reasonable access, the landowners may attempt to recover just compensation for an inverse taking before the Court of Federal Claims. *See Stringer v. United States*, 471 F.2d 381, 383 (5th Cir. 1973) ("where property is seized pursuant

---

[21] Dkt. No. 7.
[22] Dkt. No. 2-2.
[23] Dkt. Nos. 1, 2.

to valid statutory authority, as in this case, the Tucker Act provides the owner a plan, adequate, and complete remedy at law.") (internal quotations omitted). But speculative impacts or a hypothetical future taking are not compensable in this condemnation. *101.88 Acres*, 616 F.2d at 772 (holding that a landowner is not entitled to an award of compensation for a potential, future, taking).

16. Further, the United States' alleged failure to negotiate is not a defense to a condemnation proceeding. Over a decade ago, this Court addressed, and rejected, the very argument the landowners raise here. In *Tamez v. Chertoff*, 2009 WL 10693618, Judge Hanen held that, while questions pertaining to pre-condemnation negotiations may affect the ability of the United States to take possession of property, the United States "may properly file a condemnation actions before compliance with the negotiation provision of 8 U.S.C. § 1103(b)." *Tamez*, 2009 WL 10693618 at *5 (S.D. Tex. Jan. 27, 2009). *See also United States v. 1.04 Acres of Land*, *et al.*, 538 F. Supp. 2d 995, 1014-15 (S.D. Tex. 2008) (providing the parties additional time to engage in and/or provide evidence of negotiations). Similarly, the "consultation clause," 8 U.S.C. § 1103 (note), which directs DHS to consult with certain state and local entities regarding border security measures but does not require consultation before acquiring real property interests, is not a defense to the United States' condemnation of property. *1.04 Acres*, 538 F. Supp.2d at 1014; *Tamez,* 2009 WL 10693618 at *4. Judge Hanen also found that to dismiss a case due to allegedly inadequate negotiations, "only to have it re-filed would be a frivolous action and courts should not grant vain or useless things or grant decrees which would not confer any real benefit or effect any real relief." *Muniz*, Case No. M-08-023 (S.D. Tex.), Order dated April 3, 2008 at 7, n.1.[24]

---

[24] Dkt. No. 17

17. Similarly, in *1.16 Acres of Land, et al.*, Case No. 1:08-cv-169, in which Barron Adler LLP also represented the landowner, the landowners asserted:

> Without details as to access, locations and operations of gates, security and patrol issues, heightened alert procedures, being put in to the very pleadings of these condemnation actions or expressed in some other legally enforceable way, landowners and their retained experts simply do not know what property rights, and to the extent those rights, are being taking by the Government. That of course puts landowners in no position to be able to determine what may or may not be a fair offer of compensation

*1.16 Acres of Land*, Case No. 1:08-cv-169, Renewed Objections to Plaintiff's Mot. for Possession, Mot. to Compel, and Request for Evidentiary Hearing.[25] The Court rejected these arguments after holding a hearing and receiving evidence on the matter. Order dated Nov. 20, 2008[26] ("Having considered the contentions of Plaintiff and the Defendant with respect to possession, the Court hereby Denies the Defendant's Motion to Dismiss the Complaint[27] . . . Plaintiff filed a proper complaint in this action for the condemnation (and for a taking) of the defendants' property in fee simple and declaration of taking of that property in accordance with 40 U.S.C. § 3114.")

18. In relevance to this motion, these decisions are included specifically as they relate to the fact that the alleged failure to negotiate is not a defense to the condemnation action. However, the United States contends that it engaged in multiple and extensive negotiations with defendants and defendants legal representation prior to the filing of the complaint and declaration of taking. Furthermore, taking into consideration all relevant arguments made during the status hearing held in this case on February 5th, it has been established and defendants have conceded that since 2018 to the filing of the complaint the United States engaged actively in conferences and meetings with defendants to acquire needed information from defendants and ascertain decisions for design plans,

---

[25] Dkt. No. 17 at 16.
[26] Dkt. No. 26.
[27] Dkt. No. 7.

such as gate/access locations and drainage sleeves, with the sole purpose of accommodating the defendants concerns. Hence, the allegations of failure to negotiate also have no bearing in regards to the issue of acquiring possession.

19. The United States has stated the property interests it is acquiring through condemnation, and has attempted to negotiate these interests with the (unwilling) landowners. If the landowners subsequently come to believe that the United States has taken more than the interests set forth in the Complaint and Declaration of Taking, they may seek compensation for any such future taking. In any event, the United States' alleged failure to specify what rights are being acquired, and alleged failure to negotiate, are not defenses to the condemnation. For these reasons, the Court should deny the landowners' motion to dismiss.

**<u>The Court Should Strike the Landowners' Improper Objections and Defenses</u>**

20. In addition to opposing the landowners' motion to dismiss, the United States respectfully cross-moves the Court to strike their improper objections and defenses to the condemnation proceeding, the Complaint, and the Declaration of Taking. The landowners improperly object that the United States has failed to adequately describe the interest taken, and therefore any pre-condemnation negotiations have been inadequate. Mot. to Dismiss and Answer[28] at 4, ¶¶ 4-6, at 5, ¶ 3, at 6-7, ¶¶ 1-2, 5, 12. They also object to the United States' estimate of just compensation. *Id*. at 5, ¶ 7, 6, ¶ 4, and 7, ¶¶ 3. They further complain that United States allegedly failed to comply with: 1) the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. 4601, *et seq., id.,* ¶ 6; 2) "conditions precedent to the filing of a condemnation lawsuit;" *id*., ¶ 8; 3) the Declaration of Taking Act, 40 U.S.C. § 3114, *id.* ¶ 11;

---

[28] Dkt. No. 7.

and 4) and the right to due process, *id.*, ¶¶ 9-10. These challenges are not legal defenses to a federal condemnation and should be stricken.

**Standard of Review**

21. Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike pursuant to Rule 12(f) "is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (granting a motion to strike the defendant's antitrust defense). As the Ninth Circuit has explained, the function of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Similarly, the Seventh Circuit has explained that a motion to strike is "a useful and appropriate tool for weighing the legal implications to be drawn from uncontroverted facts." *United States v. 416.81 Acres of Land*, *et al.*, 514 F.2d 627, 631 (7th Cir. 1975).

22. In federal eminent domain cases, federal courts routinely dismiss objections to takings when the objections fail as a matter of law. *162.20 Acres*, 639 F.2d at 303; *416.81 Acres*, 514 F.2d at 630-32; *729.773 Acres, et al.*, 531 F. Supp. 967, 971-74 (D. Hawaii); *United States v. 2.9 Acres of Land*, *et al.*, 554 F. Supp. 529, 532 (D. Mont. 1982). While for the purposes of a motion to strike, well pleaded facts must be accepted as true, the Court need not accept conclusions of law contained therein. *See Kaiser Aluminum*, 677 F.2d at 1057 (rejecting a party's legal conclusions regarding the application of the statute of limitations in anti-trust cases).

**The Landowners' Objections Do Not Address Whether the Taking Is For a Congressionally Authorized Public Use – The Sole Valid Defense to a Condemnation Action**

23. The sole justiciable defense in a condemnation action is that a taking is not for a congressionally authorized public use. *162.20 Acres*, 639 F.2d at 303; *101.88 Acres*, 616 F.2d at

767. Other defenses fail as a matter of law. Thus, for example, allegations that a taking was unnecessary, or that the government failed to comply with environmental laws are not valid defenses to a taking. *Berman v. Parker*, 348 U.S. 26, 35-36 (1954); *United States v. 2,606.84 Acres of Land in Tarrant County, State of Texas, et al.*, 432 F.2d 1286, 1289 (5th Cir. 1970) (necessity); *162.20 Acres*, 639 F.2d at 305 (National Environmental Policy Act). The landowners' objections challenge the description of the property interest taken, the pre-condemnation negotiations, the estimate of just compensation, and the United States' alleged failure to comply with a host of statutory requirements. The United States addresses these objections in turn below, but none of these challenges are legal defenses to a federal condemnation and, accordingly, should be stricken.

**Repeated Objection to the Adequacy of the Description of Property Interests Acquired, and Any Negotiations**

23. The landowners first repeat their objections raised in their motion to dismiss, that the United States did not adequately describe the property rights it is acquiring or the potential effect of any border structure on its drainage system(s) and, as a result, any negotiations have been inadequate to comply with 8 U.S.C. § 1103. Answer[29] at 5, ¶ 3, at 6-7, ¶¶ 1-2, 5, 12. These objections are without legal basis for the same reasons, explained above, as their motion to dismiss. For these same reasons, these Court should strike these objections.

**Objections to the Estimate of Just Compensation**

24. The landowners next object to the amount of just compensation the United States has estimated for the subject property. *Id.* at 5, ¶ 7, at 7 ¶¶ 3-4. A challenge to the amount of just compensation is not a challenge to the congressional authorization or public use for which the subject property is being acquired. Therefore, it is not a defense to the condemnation action. *See*

---

[29] Dkt. No. 7.

*162.20 Acres*, 639 F.2d at 303; *101.88 Acres*, 616 F.2d at 767. *See also United States v. Cobb*, 328 F.2d 115, 116-17 (9th Cir. 1964). The deposited estimate of just compensation is just that – an estimate. *United States v. Miller*, 317 U.S. 369, 381 (1943) ("The payment is of estimated compensation; it is intended as a provision and not a final settlement with the owner; it is a payment on account of compensation and not a final settlement of the amount due."); *In re United* States, 257 F.2d 844, 849 (5th Cir. 1958) ("It should be noted that the deposit in no way affects substantial rights of landowners, and that the estimate in no way binds them as to just compensation, indeed has no bearing whatsoever on value." (internal citation omitted). The very purpose of the instant proceeding is to determine what constitutes just compensation for the subject property. If the landowners disagree with the estimated just compensation, they will have an opportunity to present evidence in support of what they believe constitutes the correct amount. Their objection to that amount is not, however, a defense to condemnation.

**Conclusory Assertions The United States Failed to Comply With Statutory Requirements**

25. The landowners also assert that the United States allegedly did not comply with: 1) the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. 4601, *et seq.*; 2) "conditions precedent to the filing of a condemnation lawsuit;" 3) the Declaration of Taking Act, 40 U.S.C. § 3114; and 4) and the constitutional right to due process. Answer[30] at 7 ¶¶ 6, 8-11. They raise these objections with no specificity or factual particularity as to how the United States allegedly has failed to comply with any requirements under these statutes. *See id*. For example, they assert that the United States has "failed to state a claim upon which relief can be granted, and has "failed to meet all conditions precedent to the filing of a condemnation lawsuit." Answer[31] at 7, ¶¶ 7-8. But they do not explain how the United States has failed to state

---

[30] Dkt. No. 7.
[31] Dkt. No. 7.

an actionable claim and do not identify what these "conditions precedent" may be. The United States cannot, therefore, respond to these assertions in the Answer in any meaningful way, and the Court should strike these objections as impermissibly vague. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (noting that "a defendant nevertheless must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advance.").

26. Even if these objections were not impermissibly vague, they still do not constitute proper objections to this condemnation proceeding. The Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601, *et seq.*, by its express terms, is not a defense to a condemnation proceeding. The provisions of 42 U.S.C. § 4651, which include the instruction that Federal agencies shall make "every reasonable effort" to negotiate before initiating condemnation proceedings, "create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." 42 U.S.C. § 4602. *See also United States v. 320.0 Acres of Land, et al.*, 605 F.2d 762, 822 n. 134 (5th Cir. 1979) ("the provisions of § 4651 are hortatory guidelines and not enforceable mandatory requirements").

27. The landowners also assert that the United States "has exceeded its condemnation powers by proceeding pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114 (1931)." Answer[32] at 7, ¶ 11. The Declaration of Taking filed in this case complies with § 3114. Declaration of Taking.[33] More importantly, as the Supreme Court has held, "[t]he Taking Act does not bestow independent authority to condemn lands for public use. On the contrary, it provides a proceeding ancillary or incidental to suits brought under other statutes." *United States v. Dow*, 357 U.S. 17, 23 (1958) (internal quotations omitted). The Act, "by its own terms, can

---

[32] Dkt. No. 7.
[33] Dkt. No. 2.

only apply after a condemnation action has already begun in a federal court." *1.04 Acres*, 538 F. Supp. 2d at 1007, citing *Dow*, 357 U.S. at 23. As a result, compliance with the Act does not affect the legal validity of the condemnation. The Act outlines procedures by which the United States can "peremptorily [] appropriate property" and acquire immediate title and right to possession; and its validity is clearly established. *Kirby Forest*, 467 U.S. at 3-4 & n. 1.

28. The landowners further assert that the "attempted taking of Defendant's property is in violation of the due process clause." Answer[34] at 7, ¶ 10. It is not clear in what way they believe their right to due process has been violated. But, contrary to their bare assertion, it has not. Landowners are not entitled to prior notice, hearing, or compensation before the United States exercises its right of eminent domain. *United States v. 131.68 Acres of Land, et al.*, 695 F.2d 872, 875 (5th Cir. 1983). Moreover, the process in which Schuster Farms and El Sabino Farms currently are participating more than satisfies any alleged due process requirements. *Tamez,* 2009 WL 10693618 at *4-5 (rejecting the argument that condemnation of property pursuant to the Declaration of Taking Act and 8 U.S.C § 1103 does not satisfies due process, and stating that, "[t]he condemnation actions provided an adequate opportunity to hear and remedy this claim.").

29. The landowners also seek "such other further relief to which [defendants] may be entitled." Answer at 9, ¶ 5. The only relief available in a federal condemnation action is the payment of just compensation: a landowner "is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public." *Bauman v. Ross*, 167 U.S. 548, 574 (1897). The landowners are entitled only to the fair market value of the property at the time of the taking. The demand for "other relief" is improper and should be struck.

---

[34] Dkt. No. 7.

## CONCLUSION

Based on the foregoing, the United States requests that this Court deny Schuster Farms' and El Sabino Farms' motion to dismiss, and to strike all defenses unrelated to the United States' authority to condemn.

             Respectfully submitted,
             RYAN K. PATRICK
             United States Attorney

By: *s/ Hilda M. Garcia Concepcion*
    **HILDA M. GARCIA CONCEPCION**
    Assistant United States Attorney
    Southern District of Texas No.3399716
    Puerto Rico Bar No. 15494
    1701 W. Bus. Highway 83, Suite 600
    McAllen, TX 78501
    Telephone: (956) 618-8004
    Facsimile: (956) 618-8016
    E-mail: Hilda.Garcia.Concepcion@usdoj.gov

    **JOHN A. SMITH, III**
    Assistant United States Attorney
    Attorney-in-Charge
    Southern District of Texas No. 8638
    Texas Bar No. 18627450
    One Shoreline Plaza
    800 North Shoreline Blvd., Suite 500
    Corpus Christi, Texas 78401
    Telephone: (361) 888-3111
    Facsimile: (361) 888-3234
    E-mail: john.a.smith@usdoj.gov
    Attorney in Charge

## CERTIFICATE OF SERVICE

I certify that on February 10, 2020, a copy of the foregoing was electronically filed in the CM/ECF system, which will automatically serve a Notice of Electronic Filing on counsel of record.

By: *s/ Hilda M. Garcia Concepcion*
**HILDA M. GARCIA CONCEPCION**
Assistant United States Attorney