IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO.   7:19-CV-407 |
| 23.311 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; AND FRANK SCHUSTER FARMS, INC., ET AL. | § § § § § § | |
| *Defendant.* | § § | |

**THE UNITED STATES' BRIEF IN RESPONSE TO THE COURT'S ORDER OF MAY 4, 2021 IN RELATION TO DEFENDANT FRANK SCHUSTER FARMS, INC'S MOTION FOR PRELIMINARY INJUNCTION OR OTHER INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, the United States of America, files this Brief in Response to the Court's Order of May 4, 2021, in relation to Defendant's Frank Schuster Farms, Inc.'s Motion for Preliminary Injunction or Other Injunctive Relief to Restore Integrity of Flood Levee and to Safeguard Abandoned Construction Site:

On December 10, 2019, the United States initiated this condemnation proceeding to acquire 23.311 acres in Hidalgo County to help secure the United States/Mexico border and to determine the amount of just compensation that must be paid for the property taken. Complaint:[1] Declaration of Taking, Schedule B.[2]

---

[1] Dkt. No. 1.
[2] Dkt. No. 2-1.

Frank Schuster Farms, Inc. ("Defendant") request's for preliminary injunction or injunctive relief would constitute a separate claim, independent of this constitutional eminent domain proceeding and should be denied in all respects.

A condemnation proceeding is an action in rem. It is not the taking of rights of designated persons, but the taking of the property itself. Because the United States has acquired title and possession over the subject property the only pending issue to be addressed is the determination of the just compensation. Any other issue separate and apart to the constitutional just compensation would be beyond this Court's jurisdiction in this case.

**FACTS AND PROCEDURAL BACKGROUND RELEVANT TO DEFENDANT'S MOTION PRELIMINARY INJUNCTION AND THIS COURT'S ORDER OF MAY 4, 2021**

This is a federal eminent domain proceeding which condemned property needed to construct, install, operate, and maintain fencing, barriers, lighting, and related structures to help secure the United States/Mexico border. Declaration of Taking, Schedule B.[3] The United States filed a Complaint and a Declaration of Taking to acquire the subject property.[4]

The issue to be determined in this proceeding is the amount of just compensation due for the taking, measured by the market value of the property taken on the date of the taking. On March 4, 2020, the United States acquired possession of the subject property.[5] As a result of having acquired possession the United States began construction of border wall infrastructure on the subject property.

On January 20, 2021, President Joseph R. Biden executed a Presidential Proclamation, terminating the national emergency at the Southern Border Wall and directing "a careful review

---

[3] Dkt. 2-1
[4] Dkt. Nos. 1, 2.
[5] Dkt. 17

of all resources appropriated or redirected to construct a southern border wall" through the development of "a plan for the redirection of funds concerning the southern border wall."[6] The plan for the redirection of funds concerning the southern border wall was expected to be developed within 60 days from the date of the proclamation.[7] The Presidential Proclamation ordered the pause of work on each construction project on the southern border and as a result of this the construction work that was undergoing on the subject property stopped while leaving gaps in the border wall infrastructure already built and areas of the levee in need of remediation.

On April 20, 2021, Defendant requested a status hearing to discuss the levee remediation[8]. The status hearing took place on May 3, 2021 and during the status hearing the judge ordered Defendant to submit in writing the relief requested. On May 4, 2021, Defendant filed its Motion for Preliminary Injunction or Other Injunctive Relief to Restore the Integrity of the Levee and to Safeguard Abandoned Construction Site.[9]

As a result of Defendant's motion this Court ordered the Parties to provide briefing on 4 issues to be addressed during a status conference set for May 6, 2021.[10] The four issues to be addressed are: 1) Whether Plaintiff's actions have created a public or private nuisance; 2) Whether Defendant's must assert a counterclaim against the government for creating a nuisance before the Court can grant injunctive relief on that basis; 3) Whether any nuisance is prospective or present; and 4) Whether the Court may rely upon its "inherent" equitable power and jurisdiction over the parties and this action to grant the injunctive relief requested by Defendants.

---

[6] Pres. Proc. No. 10142, 86 Fed. Reg. 7225 (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/proclamation-termination-of-emergency-with-respect-to-southern-border-of-united-states-and-redirection-of-funds-diverted-to-border-wall-construction/.
[7] Id.
[8] Dkt. 54
[9] Dkt. 57.
[10] Dkt. 58.

The United States will address the four issues as ordered by the Court but will initially address jurisdictional defects which make the request for preliminary injunction in this matter improper at the outset.

## LACK OF JURISDICTION

<u>Counterclaims Are Not Allowed In Federal Condemnation Proceedings and The Claim for Injunctive Relief Does Not Concern the Taking and Therefore is Beyond the Scope of the Court's Jurisdiction in This Proceeding In Rem</u>

A district court lacks jurisdiction to hear counterclaims against the United States in condemnation cases. *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 380 (4th. Cir. 1995). A property owner cannot file a counterclaim in a direct condemnation action.[11]

The district court's role is restricted to the authority for the take, the determination of title and the just compensation. "It has been long established that the role of the district court in Declaration of Taking Act condemnation proceedings is limited to a bare consideration of the legal authority to take, and…courts have been careful to refrain from considering matters or propriety, expediency and policy with regard to the use of the property sought…" *United States v. 162.20 Acres of Land, More or Less, Situated in Clay County*, 639 F. 2d 299, 304 )5th Cir., 1981).

A federal court has jurisdiction to review only one aspect of condemnation actions and it is the purpose for which the property was taken is a Congressionally authorized public use. *United States v. 0.95 Acres*, 994 F. 2d 696(9th Cir. 1993)

Defendant's are not challenging the authority for the take nor are they raising any issues within the scope of the court's jurisdiction in this proceeding (authority for the take, determination

---

[11] See, United States v. 40.60 Acres of Land, 483 F. 2d 927, 928 (9th Cir. 1973); United States v. 191.07 Acres of Land, 482 F. 3d 1132, 1140 (9th Cir. 2007).

of title or just compensation) but raising a completely separate claim not related to the determination of just compensation and this Court does not have jurisdiction to grant Defendant's requested relief. While a defendant may challenge the authority for the take a district court lacks jurisdiction to hear counterclaims in a condemnation action. This eminent domain proceeding is not the proper forum to litigate the issues raised by Defendant.

<u>No Case or Controversy in this Proceeding In Rem</u>

A court's equitable power lies only over the merits of the case or controversy before it. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). When a party seeks injunctive relief based on claims not pled in its complaint (or counterclaim), the court does not have authority to issue an injunction. *Id.* An injunction is only appropriate when it grants relief of the same nature as that to be finally granted. *Id.*

Given that the only relief to be finally granted in this condemnation proceeding is the just compensation to be paid to Defendant, any claim not related to the just compensation cannot be heard by this Court in these proceedings.

Even when a motion for preliminary injunction is predicated on a complaint, if the motion raises issues different from those presented in the complaint, the court has no jurisdiction over the motion. *Adair v. England*, 193 F. Supp. 2d 196, 200 (D. D.C. 2002) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Stewart v. U.S. Immigration and Naturalization Serv.*, 762 F.2d 193, 198–99 (2d Cir. 1985)); see also *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005) (affirming district court's denial of a preliminary injunction where claim was not presented to the court).

<u>No Available Counterclaim</u>

Even if this Court could hear a counterclaim within this federal condemnation action, there is no available counterclaim with an applicable waiver of sovereign immunity. The United States has not waived its sovereign immunity from federal common-law claims of public nuisance. The Federal Tort Claims Act ("FTCA") provides the only waiver of sovereign immunity for tort claims, and its waiver is limited to claims for money damages based on state law.

Generally, an individual may not sue the United States for tortious conduct committed by the government or its agents. *Williams v. Fleming*, 597 F. 3d 820,822(7th Cir. 2010) Congress enacted the FTCA to "define comprehensively the tort liability of the United States and its instrumentalities." *F.D.I.C. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 371(7th Cir. 1979) This placed 2 limitations on the FTCA's waiver of sovereign immunity that forbid the relied sought in this case.  (1) that the FTCA's waiver is limited to actions for money damages. 28 U.S.C. §1346; *Scheinder v. United States*, 936 F. 2d 956, 959 (7th Cir. 1991); the FTCA forbids claims against the United States, such as a public nuisance claim, that are based solely on federal common law.

The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place* where the act or omission occurred." 28 U.S.C.§1346(b). That "law of the place" language has universally been interpreted to mean that the FTCA's waiver is limited to tort claims recognized under the law of the state where the act or omission occurred.  The Supreme Court has expressly held that the FTCA's waiver of sovereign immunity does not extend to claims based on federal common law *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). (holding that where "federal law, not state law, provides the source of liability" the United States "simply has not rendered itself liable").

Any relief sought under a nuisance claim would be based solely on federal common law and therefore not a state law cause of action.

The United States and its agencies may not be sued unless it has waived its sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). A claim seeking to abate a public nuisance is a tort claim seeking injunctive relief. Restatement (Second) of Torts §821B(1979). The FTCA impliedly forbids courts from issuing injunctive relief against the United States in tort cases. 28 U.S.C. §1346(b).

A waiver of sovereign immunity must be unequivocally expressed in the statutory text…and will not be implied. *Lane v. Pena*, 518 U.S. 187, 192 (1996)

<u>No Entitlement To Preliminary Injunction</u>

Moreover, even if Defendant's could overcome the foregoing jurisdictional defects, they have not met their burden of showing an entitlement to preliminary injunction more so when Defendant's are requesting a mandatory injunction rather than a prohibitory injunction to preserve the status quo.

"Because a mandatory injunction requires the court to command the defendant to take a particular action, 'mandatory writs are ordinarily cautiously viewed and sparingly issued.'" *Graham v. Medical Mut. Of Ohio*, 130 F. 3d 293, 295 (7th Cir. 1997)(quoting *Jordan v. Wolke*, 593 F. 2d 772, 774 (7th Cir. 1978)). Thus, "mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds." *W.A. Mack, Inc. v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958). To demonstrate those clear equitable grounds, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008).

We point out, there is no complaint or claim made by Defendant. Furthermore, to meet the factors for a preliminary injunction claim there **must** be a plausible claim on the merits. Just this alone defeats any possible claim within this eminent domain proceeding and for the injunctive relief requested. Because a district court lacks jurisdiction to hear a counterclaim in a federal condemnation action and because the United States has not waived its sovereign immunity to a federal common-law tort claim, such as a public nuisance claim seeking injunctive relief, Defendant cannot show any likelihood of success on the merits.

The United States now proceeds to address the four aforementioned issues. Because issues 2 and 4 are intertwined they are discussed together.

1) Whether Plaintiff's actions have created a public or private nuisance

The United States maintains that neither a private nor public nuisance has been created. A private nuisance is a nontrespassory invasion of another's interest in the private use or enjoyment of land." *Lethu Inc. v. City of Houston*, 23 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 611 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). A "private nuisance" affects an individual or a small number of individuals rather than the public at large. Bolton v. Fisher, 528 S.W.3d 770 (Tex. App. 2017) A "public" or "common nuisance" is a condition that amounts to an unreasonable interference with a right common to the general public. *See Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.). "A public nuisance 'affects the public at large' by 'adversely affect[ing] either the entire community, a public gathering place, or even a considerable portion of the citizenry.'" *Bolton v. Fisher*, 528 S.W.3d 770, 778 (Tex. App.—Texarkana 2017, pet. denied) (quoting *Ortega v. Phan–Tran Prop. Mgmt., L.L.C.*, No. 01-15-00676-CV, 2016 WL 3221423, *2–3 (Tex. App.—Houston [1st Dist.] Jun. 9, 2016, pet.

denied); *Walker v. Tex. Elec. Serv. Co.*, 499 S.W.2d 20, 27 (Tex. Civ. App.—Fort Worth 1973, no writ)). Private person may not maintain an action based upon a public nuisance without showing a special injury resulting from the nuisance. Jamail v. Stoneledge Condo. Owners Ass'n, 970 S.W.2d 673 (Tex. App. 1998).

Upon deposit of the estimated just compensation, title to the tract identified as RGV-WSL-4000 vested in the name of the United States by operation of law.[12] The United States was involved in active construction of the border barrier until the January 20, 2021 Presidential Proclamation terminating the national emergency at the Southern Border Wall and directing "a careful review of all resources appropriated or redirected to construct a southern border wall" through the development of "a plan for the redirection of funds concerning the southern border wall."[13] The pause in construction resulted in gaps in the border barrier, however these gaps in the levee system have not affected Defendant's interest in the private use or enjoyment of land. Defendant retains access to the southern remainder of the property and has not suffered damages resulting from the breaches in the flood barrier system. Further, the Department of Homeland Security has already announced its efforts and intention to quickly repair the Rio Grande Valley's Flood Barrier System in order to protect the regions of Hidalgo County, Texas from flooding.[14] Accordingly, Defendant has not suffered actual damages resulting from the pause in construction.

---

[12] Upon the filing of the Declaration of Taking and depositing the estimated compensation in the Registry of the Court, the following events occur by operation of law: "1 title to the estate or interest specified in the declaration vests in the Government; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation." 40 U.S.C. § 3114(b); *see E. Tennessee Nat. Gas. Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004) (in a Declaration of Taking Act case, "[t]itle and the right to possession vest in the government immediately upon the filing of a declaration and the requisite deposit.").

[13] Pres. Proc. No. 10142, 86 Fed. Reg. 7225 (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/proclamation-termination-of-emergency-with-respect-to-southern-border-of-united-states-and-redirection-of-funds-diverted-to-border-wall-construction/.

[14] *See* https://www.dhs.gov/news/2021/04/30/dhs-announces-steps-protect-border-communities-wall-construction.

2) <u>Whether Defendant's must assert a counterclaim against the government for creating a nuisance before the Court can grant injunctive relief on that basis, and 4) Whether the Court may rely upon its "inherent" equitable power and jurisdiction over the parties and this action to grant the injunctive relief requested by Defendants;</u>

Defendant's must assert a counter claim for the court to grant injunctive relief and the court's inherent equitable power does not provide jurisdiction for the court to grant the injunctive relief requested in this condemnation proceeding.

The Declaration of Taking Act gives the court jurisdiction to set the term on which possession is to be granted. 42 U.S.C. §3114(d)(1). The United States recognizes the Court has authority to fix the terms and the time on which possession is transferred. Based on this, a court could likely use injunctive relief to enforce a possession order, without landowners having to file a counterclaim. See, *USA v. 162.20 Acres of Land I*, 639 F. 2d 299, 304-305 (5th Cir. 1981).

("We agree that a district court having before it a condemnation case may, pursuant to the power granted under the [DT Act for a court to set the terms for transferring possession], require compliance with [NHPA] and either withhold possession by the government or take appropriate injunctive action to enforce its order."); *see also USA v. 162.20 Acres of Land II*, 733 F.2d 377, 379 (5th Cir. 1984) (later ruling in same litigation following remand).

However, in *162.20 Acres I, F.2d at 304-305*, the Fifth Circuit suggest the DT Act provision regarding possession is the only source of jurisdiction for granting injunctive relief in a condemnation proceeding. The only source of jurisdiction for a potential injunctive relief that would not require landowners to assert a separate claim in a separate and independent proceeding would be the court's jurisdiction to enforce its possession order set under specific terms. The

specific injunctive relief requested would have to stem from the possession order granted under specific terms by the court.

However, in this proceeding possession has already been transferred and the possession order did not set any specific terms under which such transfer of possession was made. More specifically, the order granting possession did not include terms of possession regarding the integrity of the levee or regarding the construction site. More so, safeguarding the integrity of the levee and the construction site (the basis of the injunctive relief requested) was not a term or condition of the court's order granting possession to the United States. Therefore, the requested relief is outside the court's jurisdiction under the Declaration of Taking Act to enforce possession orders. Because the court's jurisdiction stems from its power to enforce an order for possession's terms and that is not the claim asserted in the request for preliminary injunction, the Court may not rely upon its "inherent" equitable power and jurisdiction over the parties and this action to grant the injunctive relief requested by Defendants in **this** condemnation proceeding.

As a result, Defendant must assert a counterclaim. Furthermore, because counterclaims are barred in this eminent domain proceeding, the claim for injunctive relief would have to be a separate proceeding.

3) <u>Whether any nuisance is prospective or present;</u>

The United States maintains that the pause in construction has not risen to the level of a public or private nuisance. Further, the Houston Court of Appeals states that there no cause of action for damages caused by a prospective nuisance, but recognizes that a court may use its equitable power to enjoin a prospective nuisance. *1717 Bissonnet, LLC v. Loughhead*, 500 S.W.3d 488, 497 (Tex. App.—Houston [14th Dist.] 2016, no pet.). As states previously, Defendant has not yet suffered a damage resulting from Plaintiff's actions as Defendant retains access to the

southern remainder and has not suffered damage as a result of the gaps in the flood barrier. Further, the United States has already announced its intention to quickly repair the flood barrier system in the near future.[15]

For the reasons stated above this Court should deny the Motion for Preliminary Injunction.

Respectfully Submitted,

JENNIFER B. LOWERY
Acting United States Attorney
Southern District of Texas

By: *s/ Hilda M. Garcia Concepcion*
**HILDA M. GARCIA CONCEPCION**
Assistant United States Attorney
Southern District of Texas No. 3399716
Puerto Rico Bar No. 15494
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8004
Facsimile: (956) 618-8016
E-mail:Hilda.Garcia.Concepcion@usdoj.gov
Attorney in Charge for Plaintiff

---

[15] *See* https://www.dhs.gov/news/2021/04/30/dhs-announces-steps-protect-border-communities-wall-construction.

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2021, a copy of the foregoing was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on counsel of record and a copy of the foregoing document will be served to other parties by regular mail.

*s/ Hilda M. Garcia Concepcion*
**HILDA M. GARCIA CONCEPCION**
Assistant United States Attorney
